# ESTATE OF BRIDGET McMAHON, DECEASED.

## APPEAL BY JOHN McMAHON FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

### Argued January 17, 1889—Decided February 3, 1890.

(*a*) A testatrix directed her executors to pay to her daughter the interest accruing on a mortgage, until said mortgage was paid, when the principal thereof was to be divided equally among seven children named.

(*b*) She then bequeathed two legacies to two of her sons, not among the seven children first named, but said legacies were "not to be paid until payment of the mortgage above mentioned to my executors:"

1. In such case, the principal and interest of the mortgage, having been specifically bequeathed, were not subject to abatement on a deficiency of the estate to pay the two legacies to the testator's sons.

2. On the distribution of the decedent's estate, it was not error to exclude from allowance a note signed by the mark of the testatrix, who could not read or write, and the execution of which was not clearly and satisfactorily established.

Before Paxson, C. J., Sterrett, Green, Williams, McCollum and Mitchell, JJ.

No. 113 July Term 1889, Sup. Ct.; court below, No. 22 March Term 1889, O. C.

On March 8, 1889, the second account of John McMahon and Francis Aikens, executors of the will of Bridget McMahon, deceased, was called for audit, before Ashman, J.

It was made to appear before the auditing judge that the testator died January 16, 1886, leaving a will dated September 12, 1885, duly admitted to probate, providing as follows:

Adjudication.

Item: I hereby direct my executors, hereinafter named, to pay to my daughter, Catharine Aikens, the interest or income accruing from a mortgage of three thousand dollars, given and executed by Daniel Lee and Bridget, his wife, to me, recorded in Mortgage Book G. G. P., No. 31, page 33, etc., secured upon premises on Frankford avenue; it being my will and intention that my said daughter shall receive all said interest or income until the principal of said mortgage shall be due and payable, but no longer.

Item: As soon as the principal of said mortgage shall be due and payable, I direct my said executors, hereinafter named, to collect the same and divide said principal equally between my seven children, share and share alike, viz.: Catharine Aikens, Annie Breen, Mary Fullems, Elizabeth Coyne, Rose McCloskey, Thomas McMahon and Patrick McMahon.

Item: I give, devise and bequeath unto my son, Edward McMahon, the sum of one hundred dollars; said legacy is not to be paid until the payment of the mortgage above mentioned to my executors.

Item: I give, devise and bequeath unto my son, John McMahon, the sum of two hundred dollars; said legacy not to be paid until payment of the mortgage above mentioned to my executors.

Item: All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath unto my seven children, viz.: Catharine Aikens, Annie Breen, Mary Fullems, Elizabeth Coyne, Rose McCloskey, Thomas McMahon and Patrick McMahon, their heirs and assigns, share and share alike.

After hearing the parties interested, an adjudication was filed, which in part was as follows:

The re-adjudication of the first account showed that the only estate of the testatrix, exclusive of the mortgage named in the will, consisted of personalty, which amounted to $47. The accountants were thereupon directed to hold this sum until the payment of the mortgage. All the parties in interest afterwards agreed to the sale of the mortgage, which was accordingly effected. The proceeds of that sale, amounting to $2,800 forms the fund now for distribution.

Adjudication.

The mortgage was specifically bequeathed, and will abate only for the payment of debts. The two legacies of $100 and $200 respectively to the two sons, although payable when the mortgage should be paid, were not ordered to be paid out of its proceeds; and the mere fact of the postponement does not imply, the auditing judge thinks, that they were to come out of that fund.

The personal estate, outside of the mortgage, was insufficient to pay the debts, and consequently there are no moneys for the payment of the pecuniary legacies mentioned. Certainly, if the general estate had been ample, it would not be pretended that these two legacies would have been payable out of this mortgage. That the personalty is inadequate, can make no difference in the principle. . . . .

Considerable testimony was offered as to a claim by John McMahon, a son of the decedent, and one of the accountants, upon a promissory note dated December 29, 1884, at one year, for $331.27, which he alleged had been given him by the decedent. The note was signed by mark and was not witnessed.

Bridget Lee, a daughter of decedent, testified that John McMahon, the payee, and another man, unknown to her, met her mother at the house of the witness in December, 1884, and that John produced books and papers showing her mother's indebtedness to him, for which the stranger drew a note, and that witness went for a man named Morton as a witness to the note. Morton was produced and swore that the decedent made her mark to the note in his presence, and that although he was called to witness it and could write, he did not sign his name as a witness. The man was evidently on terms of great intimacy with the preceding witness. He admitted that she held a policy of insurance on his life, in her own favor, whose amount he did not know, but the premiums on which Mrs. Lee herself paid. He also admitted that he was not indebted to her. Against this evidence, two witnesses declared that on the day of decedent's death, the claimant came to the house, and, standing by the bed of his mother, said : "Poor mother is gone, but thank God she owes nobody anything." Mrs. Lee was then called to contradict these witnesses and she swore that John was not present while those witnesses were in the house. She was in her turn contradicted by a third witness who testified that John

was present.   John himself admitted the fact of his presence, but said that to the best of his knowledge and belief he did not say that his mother owed nothing.   The memory of the claimant was not as unclouded as it might have been, on another point connected with the day of death.   He knew that the body of his mother was carried down stairs that afternoon, but was uncertain whether he had or had not helped to carry it.   He was, however, to use his own words, "partly of the opinion" that the undertaker and himself had borne it between them.

The co-executor declared that he and John McMahon had conversations in their capacity as executors, relative to the debts of decedent, among which was mentioned her debt of $150 to her daughter, Mrs. Lee, but that the claimant never alluded to the circumstance that he held a note against his mother.   The witness also declared that the decedent had told him that she owed about $45 to John for groceries bought at his store, but that she never spoke of the note.   Lee, the husband of the first named witness, went at one time to the office of the counsel for some of the children, and informed counsel that Morton, the alleged witness to the note, had been promised by John McMahon a push-cart and some money if he would testify to the execution of the note, and that John had mentioned the fact of this promise to Mrs. Lee.   At the audit, Lee took the witness stand and admitted that he had made the statements in question to counsel, but that they were absolutely false. He assigned no motive for having made them, and described them as " prevarications " which were not made under oath. Unfortunately for the interest of students in casuistry, the witness was not prevailed upon to give his definition of what constitutes a " lie."

It would not be safe to allow a claim of this sort, upon this evidence.   A promissory note signed by the mark of a person who could not read or write, and which might have been filled up as easily for thousands as hundreds of dollars, should at least be distinctly proved.   The single witness to its execution did not subscribe his name, although he admitted he could write and had been summoned solely as a witness to the paper. The only proof of any consideration for the instrument was given by the daughter, who said she saw the payee give money two or three times to his mother, and who also said that the

Adjudication.

latter told her that she had settled with John and thanked God for it. But the witness was so flatly contradicted on other points, that even this evidence was comparatively worthless. Her own husband's statement threw grave doubts upon her story, and although he unquestionably lied, it is impossible for the auditing judge to determine whether he lied in his statement to counsel, or in his subsequent retraction of the statement, when on the witness stand.

The note in suit was presented by the accountant, who, as executor, had control of the decedent's papers. He offered it as an antagonist of the estate which he represented. Yet he did not show that this note had never left his own possession, nor that he did not find it among the decedent's effects. In the latter case, of course the presumption would be, that the note had been paid. He was legally entitled to the note as executor, and he was therefore doubly bound to show that he had it by another and hostile title. At least he should have informed his co-executor of its existence; but the proof was that although the two men had conversations with each other in respect to the debts of the estate, he never mentioned this note. If anything else is needed to throw a doubt upon the honesty of his demand, it is found in the oaths of three witnesses, two of whom were apparently disinterested, that he had declared at the side of his mother's corpse, that the decedent had died owing nothing. The claim is rejected.

—A distribution having been reported awarding the interest, accrued upon the mortgage, to Mrs. Aikens, and the principal to the persons named in the second item of the will, John Mc-Mahon, the legatee of the fourth item, filed exceptions alleging that the court erred: 1. In finding that no fund existed for the payment of his legacy. 2. In disallowing his claim upon the note presented.

On April 27, 1889, after argument before the court in banc, the exceptions filed were dismissed and the adjudication confirmed, without opinion filed; whereupon the exceptant took this appeal assigning the dismissal of his exceptions and the confirmation of the adjudication as error.

*Mr. Robert J. Williams* and *Mr. J. Henry Williams*, for the appellant.

Counsel cited: Webb v. Hitchins, 105 Pa. 91; Finney's App., 113 Pa. 11; McDevitt's App., 113 Pa. 103; Follweiler's App., 102 Pa. 581; Hulton's App., 104 Pa. 359; Merkel's App., 109 Pa. 235; Ferry's App., 102 Pa. 207; Hellerman's App., 115 Pa. 120.

*Mr. Joseph A. Abrams*, for the appellees.

Counsel cited: Smith's App., 103 Pa. 559; Ash's Est., 8 W. N. 28; McConnell's App., 97 Pa. 31.

PER CURIAM:

The well considered opinion of the auditing judge relieves us from a discussion of this case.

> Decree affirmed and the appeal dismissed at the costs of the appellant.